**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| GORDON BULLOCK, | ) No. EDCV 17-1297-PA (AS) |
| Plaintiff, | ) |
| v. | ) **ORDER DISMISSING COMPLAINT** |
| NAFEESAH TILLMAN, Probation Supervisor, et al., | ) **WITH LEAVE TO AMEND** |
| Defendants. | ) |

**INTRODUCTION**

On June 28, 2017, Gordon Bullock ("Plaintiff"), a California state prisoner proceeding pro se, filed a civil rights Complaint pursuant to 42 U.S.C. § 1983. ("Compl.," Docket Entry No. 1). The Complaint names the following seven Defendants: (1) Nafeesah Tillman, a probation supervisor at the Riverside County Probation Department ("RCPD"); (2) Aneka Amezcua, who works in the "Restitution Service Unit" at the RCPD; (3) "City of Riverside, on behalf of Judge Becky Duggins (sueing City of Riverside)"; (4) the Riverside County Sheriff's Department; (5) the Sacramento County Sheriff's Department; (6) "alleged victim" Brian Kinman; and (7) Mark A. Hake, the Chief

1

Probation Officer at the RCPD. (Id. at 3-4 (continuous pagination used throughout this Order)). Plaintiff names Kinman in his individual capacity only and names all other Defendants in their official and individual capacities. (Id.).

The Court has screened the Complaint as prescribed by 28 U.S.C. § 1915A and 42 U.S.C. § 1997e. For the reasons discussed below, the Court DISMISSES Plaintiff's Complaint WITH LEAVE TO AMEND.[1]

**FACTUAL BACKGROUND AND PLAINTIFF'S ALLEGATIONS[2]**

On March 29, 2016 at 6:45 A.M., the "dorm C.O." in Plaintiff's housing unit instructed Plaintiff to "get ready" because "Riverside sheriffs" had arrived to take Plaintiff to court. (Compl. at 5). Plaintiff said that his case was "over" but, after being instructed again to "get ready," Plaintiff went to the "chow hall," where he did not eat breakfast but received a boxed lunch. (Id.). Plaintiff returned to his housing unit but was then "rushed . . . out" to the Receiving and Release Department and was not permitted to pack property, including medication for a heart condition. (Id.).

---

[1] Magistrate judges may dismiss a complaint with leave to amend without approval from a district judge. McKeever v. Block, 932 F.2d 795, 798 (9th Cir. 1991).

[2] The Court's description of this case's factual background and Plaintiff's allegations is drawn from the Complaint itself. In any First Amended Complaint, Plaintiff may further clarify the nature of his allegations and, if necessary, correct any inaccuracies in this description.

About an hour later, two sergeants brought Plaintiff to the "Riverside sheriffs." (Id. at 6). Plaintiff told the "sheriffs" that he had no "case" and had not been served with any "papers," but Plaintiff was told that "they just want[ed] [him] in court." (Id.). Plaintiff objected that he did not have his medication and had not eaten, but one of the "sheriffs" told Plaintiff that they would be at "Riverside Court" in about an hour and that Plaintiff should not "worry." (Id.).

About an hour into the trip, the "sheriffs" stopped and bought food and drinks. (Id.). They did not permit Plaintiff to eat or drink during the trip, which lasted five or six hours and eventually ended at the Sacramento County Detention Center. (Id. at 6-7). Plaintiff also thought that the "sheriffs" might be planning to kill him because they did not permit him to eat or drink or bring his medication, they were driving in the "opposite direction" from the "Riverside Court," and Plaintiff had not been served with any papers related to his court appearance. (Id. at 6). Plaintiff's anxiety began to cause him to have chest pain, but the "sheriffs" did nothing to assist Plaintiff after being told about his chest pain. (Id.). One "sheriff" repeatedly said that the van would arrive at "Riverside Court" in about twenty minutes. (Id.).

Upon arriving at the Sacramento County Jail, Plaintiff told a nurse that he was having chest pains and did not have his medication, but Plaintiff "was just put back in [the] tank." (Id. at 7). At 2:00 P.M. he told an officer that he had not eaten all day, and the officer replied that Plaintiff "wouldn't [want] one of those nasty

3

sandwiches" and returned Plaintiff to the "tank," where he "was forced to drink water from a filthy moldy sink." (Id.). Plaintiff was fed "a little food on a dirty tray about 2 and something later." (Id.). Two hours later, he was taken to the "hole," where he received only a thin blanket and no sheets. (Id.).

Plaintiff filed a grievance because he was not fed, was placed in the "hole" for nondisciplinary reasons, did not receive his medication, and did not receive sheets or enough blankets to stay warm. (Id.). On March 30, 2016, Plaintiff was denied a shower; when he asked why, the officer who had refused to release Plaintiff said "fuck you and your grievance." (Id. at 8). The officer also said "fuck you" when Plaintiff requested another grievance form. (Id.). Plaintiff began experiencing chest pains and told the officer so; the officer, with whom Plaintiff was communicating through a speaker in the wall, said "fucking nigger" and turned off the speaker. (Id.). Plaintiff twice attempted to "call back," but the officer refused to speak with Plaintiff any further. (Id.).

On April 1, 2016, the "Riverside sheriffs" again picked up Plaintiff to take him to Riverside County Jail. (Id.). Plaintiff appears to contend that he should not have been taken to Riverside County Jail because he suffers from Valley Fever[3] and should not be taken "anyplace where it a risk for Valley Fever." (Id.). During the journey, the "sheriffs" picked up an inmate at Avenal State

---

[3] Coccidioidomycosis, commonly known as "Valley Fever," is an infection caused by inhaling the spores of the fungus Coccidioides, which is endemic to the soil throughout the southwestern United States. See Nawabi v. Cates, 2015 WL 5915269 at *1 (E.D. Cal. 2015).

4

Prison. (Id. at 9). When the "sheriffs" told Plaintiff that they were going to Avenal State Prison, Plaintiff said that his Valley Fever prevented him from going there, but the "sheriffs" said that they would only be there "a few minutes" and went anyway. (Id.). It was "real windy" at Avenal State Prison and the van's windows were partially open, causing Plaintiff to breathe in "a lot of dust" and start coughing. (Id.). A few hours later, Plaintiff began "f[ee]ling sick and having pains"; a few hours after that, Plaintiff arrived at Riverside County Jail. (Id.).

Upon arriving at Riverside County Jail, Plaintiff was put in the "holding tank" for four more hours even after telling officers that he was having chest pains. (Id.). Plaintiff was moved to another holding cell at 10:00 P.M.: at that time, he was "sick since [he] left Avenal" and hungry because all he had eaten that day was a sandwich, milk, and fruit at 3:00 A.M. (See id.). Plaintiff told a "Riverside sheriff" named Richardson that he needed medical assistance and to lie down; Richardson said "I don't care" and told Plaintiff to "sit [his] ass down in a fuckin' corner." (Id.). Plaintiff asked Richardson for a grievance form and Richardson said "hell no, fuck you." (Id.). Plaintiff told Richardson that Plaintiff would sue him. (Id.).

Plaintiff was later called before a "Corporal Harris," who told Plaintiff that he was being written up for threatening to kill Richardson. (Id. at 10). Plaintiff told Harris that Richardson was lying. (Id.). Harris told Plaintiff that she had a videotape of Plaintiff's threat but refused to show Plaintiff the tape. (Id.).

Plaintiff returned to his cell and started having chest pains. (Id.). Plaintiff pressed a button on the wall to request help, but Harris, who was "in the bubble," said "no" and turned off the speaker. (Id.). After "over [five] minutes," an officer permitted Plaintiff to go to the nurse's station. (Id.). At the nurse's station, Plaintiff's blood pressure was high and a nurse wanted to send Plaintiff to an outside hospital, but "the doctor she called" refused. (Id.). Plaintiff's blood pressure eventually went down and his chest pains "almost" stopped." (Id.).

On April 4, 2016, Plaintiff appeared in court before Judge Duggins, who told Plaintiff that he was there for "restitution." (Id.). Plaintiff said that he was not ordered to pay restitution and also argued that Judge Duggins had "intentionally" picked him up a week before; drove him "300 and something miles the opposite direction"; deprived him of medication, food, and sleep; and put him in the "hole" so that Plaintiff would "plead guilty" to "whatever this is." (Id.). Judge Duggins laughed, said "I'll send you back," and ordered Plaintiff to pay $845 in restitution. (Id.).

Plaintiff replied that the judge at a preliminary hearing had said that the car for which restitution was sought was worth less than four hundred dollars and had "dents all over it." (Id. at 11). Plaintiff contended that he had not been ordered to pay restitution because the car "wasn't worth much" and Kinman, the "alleged victim," wanted almost one thousand dollars "for an alleged thrown bottle." (See id. (spelling altered)). Plaintiff also requested a receipt or repair estimate; Judge Duggins did not provide one and did not "give

6

[Plaintiff] a hearing." (Id.). Plaintiff contends that his 2011 plea agreement is "blank" regarding restitution. (Id.).

While Plaintiff was waiting to be returned to his prison following his appearance before Judge Duggins, some papers were put under his door; among the papers was a recommendation signed by Tillman and Amezcua and "submitted" by Hake recommending that Plaintiff pay restitution in the amount of $845.87. (Id.).

Plaintiff contends that his plea agreement is "blank" regarding restitution, he was not given any "paperwork" until 2016, and he was not given a repair estimate substantiating the amount necessary to cover repairs to the car. (See id.). Plaintiff also argues that during his journey he was deprived of food, water, medication, and a shower; retaliated against for filing a grievance; and taken to a place that aggravated his Valley Fever. (Id. at 11-12). Plaintiff alleges violations of his First, Eighth, and Fourteenth Amendment rights and seeks compensatory and punitive damages. (Id. at 12).

**STANDARD OF REVIEW**

Congress mandates that district courts initially screen civil complaints filed by prisoners seeking redress from a governmental entity or employee. 28 U.S.C. § 1915A. A court may dismiss such a complaint, or any portion thereof, before service of process, if the court concludes that the complaint (1) is frivolous or malicious; (2) fails to state a claim upon which relief may be granted; or (3) seeks monetary relief from a defendant who is immune from such

relief. 28 U.S.C. § 1915A(b)(1)-(2); see also Lopez v. Smith, 203 F.3d 1122, 1126-27 & n.7 (9th Cir. 2000) (en banc).

Dismissal for failure to state a claim is appropriate if a complaint fails to proffer "enough facts to state a claim for relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678; see also Hartmann v. Cal. Dep't of Corr. & Rehab., 707 F.3d 1114, 1122 (9th Cir. 2013). A plaintiff must provide "more than labels and conclusions" or a "formulaic recitation of the elements" of his claim. Twombly, 550 U.S. at 555; Iqbal, 556 U.S. at 678. However, "[s]pecific facts are not necessary; the [complaint] need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Twombly, 550 U.S. at 555).

In considering whether to dismiss a complaint, a court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff. Lee v. City of L.A., 250 F.3d 668, 688 (9th Cir. 2001). Moreover, pro se pleadings are "to be liberally construed" and held to a less stringent standard than those drafted by a lawyer. Erickson, 551 U.S. at 94; see also Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) ("Iqbal

incorporated the Twombly pleading standard and Twombly did not alter courts' treatment of pro se filings; accordingly, we continue to construe pro se filings liberally when evaluating them under Iqbal."). Nevertheless, dismissal for failure to state a claim can be warranted based on either the lack of a cognizable legal theory or the absence of factual support for a cognizable legal theory. Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008). A complaint may also be dismissed for failure to state a claim if it discloses some fact or complete defense that will necessarily defeat the claim. Franklin v. Murphy, 745 F.2d 1221, 1228-29 (9th Cir. 1984).

**DISCUSSION**

The Complaint contains deficiencies warranting dismissal, but leave to amend will be granted to permit Plaintiff to correct these deficiencies. See 28 U.S.C. § 1915A(b)(1).

**A. Plaintiff Fails To State A Claim Against Any Municipality**

Plaintiff names as Defendants the City of Riverside,[4] the Riverside County Sheriff's Department, and the Sacramento County Sheriff's Department. (Compl. at 3-4).

---

[4] The Court assumes that Plaintiff intends to name the City of Riverside by naming "City of Riverside, on behalf of Judge Becky Duggins (sueing City of Riverside)." (Compl. at 3). The Court observes that any claims against Judge Duggins for money damages related to her conduct as a judicial officer would likely be barred by judicial immunity. Ashelman v. Pope, 793 F.2d 1072, 1075 (9th Cir. 1986) (en banc). However, the likely immunity of Judge Duggins

9

Preliminarily, a department, agency or unit of a local government is generally an improper defendant. See Hervey v. Estes, 65 F.3d 784, 791-92 (9th Cir. 1995) (police narcotics task force not a "person" or entity subject to suit under § 1983). Plaintiff's claims against the Riverside County Sheriff's Department and the Sacramento County Sheriff's Department are therefore dismissed with leave to amend. In any First Amended Complaint, Plaintiff may name the County of Riverside or the County of Sacramento as a Defendant if he wishes to continue to pursue claims against these entities or their departments or agencies.

However, even construing Plaintiff's municipal liability claims as brought against the City of Riverside, the County of Riverside, and the County of Sacramento, Plaintiff's allegations are inadequate. A municipality is liable under § 1983 only for constitutional violations occurring as the result of an official government policy or custom. Collins v. City of Harker Heights, Tex., 503 U.S. 115, 121 (1992). To prove municipal liability under § 1983, Plaintiff must show both a deprivation of a constitutional right and a departmental policy, custom, or practice that was the "moving force" behind the constitutional violation. Villegas v. Gilroy Garlic Festival Ass'n, 541 F.3d 950, 957 (9th Cir. 2008). There must be a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation." Id. Proof of a single incident of unconstitutional activity, or even a series of "isolated or

---

does not necessarily bar a suit against her municipal employer. See Kentucky v. Graham, 473 U.S. 159, 166-67 (1985) (suit against public official's employer is not barred by immunity defenses personal to the official).

sporadic incidents," will not give rise to liability under § 1983. Gant v. Cnty. of Los Angeles, 772 F.3d 608, 618 (9th Cir. 2014). Rather, liability must be "founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996).

At most, Plaintiff's Complaint alleges against each municipal Defendant a single incident of unconstitutional activity or a series of isolated and sporadic incidents over the course of a few hours or days. Plaintiff does not allege that these deprivations were carried out pursuant to municipal policies, customs, or practices. Plaintiff's allegations are therefore insufficient to establish municipal liability, and these claims must be dismissed with leave to amend.[5] Gant, 772 F.3d at 618.

**B.  Defendant Kinman Was Not Acting "Under Color Of State Law"**

Plaintiff claims that Brian Kinman, the "alleged victim" to whom restitution was ordered, "knowingly went and got a fake estimate and presented [it] to [the] probation department" and "conspired with" the RCPD and Judge Duggins to "embezzle" money from Plaintiff. (Compl. at 4, 12 (spelling altered)).

---

[5] Plaintiff is also advised that "individual" and "official" capacity clarify the role in which a government official is sued: claims against a city or county are necessarily "official capacity" claims. See Kentucky, 473 U.S. at 165-66 ("Official-capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent." (internal quotation marks omitted)).

11

In order to obtain relief under § 1983, a plaintiff must show that: "(1) [an] action occurred 'under color of state law' and (2) the action resulted in the deprivation of a constitutional right or federal statutory right." See Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). Conspiracy itself is not a constitutional tort under § 1983, but it is often alleged to "draw in private parties who would otherwise not be susceptible to a § 1983 action because of the state action doctrine." Lacey v. Maricopa County, 693 F.3d 896, 935 (9th Cir. 2012) (en banc).

Plaintiff's conspiracy claims against Kinman are vague and entirely conclusory, and Plaintiff's allegations are insufficient to implicate Kinman in a conspiracy to violate his civil rights. See Lacey, 693 F.3d at 937 ("conclusory conspiracy allegations" were insufficient to implicate defendant in conspiracy to violate civil rights). Therefore, Plaintiff has not plausibly pled that Kinman acted "under color of state law" as required to state a § 1983 claim against him. Plaintiff's claims against Kinman are therefore dismissed with leave to amend.

**C.  The Probation Officer Defendants Are Likely Entitled To Immunity**

Plaintiff names as Defendants Mark A. Hake, Nafeesah Tillman, and Aneka Amezcua, all of whom work at the RCPD and appear to have been involved in preparing a "Memorandum" determining the amount of restitution that Plaintiff should pay. (Compl. at 3-4, 14-15).

State judges are entitled to absolute immunity for their judicial acts. Swift v. California, 384 F.3d 1184, 1188 (9th Cir. 2004). Judicial immunity may be extended to other officials if their "judgments are functionally comparable to those of judges - that is, because they, too, exercise a discretionary judgment as part of their function." Id. (alterations and internal quotation marks omitted). Probation officers preparing reports for the use of state courts may possess judicial immunity for acts performed within the scope of their official duties. See Demoran v. Witt, 781 F.2d 155, 157–158 (9th Cir. 1986). For example, probation officers receive judicial immunity for their role in preparing presentence reports because, in preparing these reports, probation officers act as "an arm of the sentencing judge;" engage in "impartial fact-gathering for the sentencing judge", the results of which can be considered in aggravation or mitigation of a punishment; and serve a function "integral to the independent judicial process." See id.

Here, the report prepared by the Defendants associated with the RCPD indicates that it was prepared upon a November 2011 court order to "determine Victim Restitution" and was prepared using a police report and information provided by Kinman. (Compl. at 15). Judge Duggins reviewed the report and imposed the amount of restitution recommended. (See id. at 10). Although Plaintiff is correct that the amount of restitution is blank on his plea agreement, the same provision of the plea agreement agrees that Plaintiff will pay restitution if the victim suffered economic harm and that, if the parties do not agree on a restitution amount, the probation department will determine the appropriate amount. (Id. at 16).

13

Therefore, it appears that the Defendant probation officers were acting at the direction of the sentencing court in preparing the report, as contemplated in Plaintiff's plea agreement, and serving a function "integral to the independent judicial process." See Demoran, 781 F.2d at 157–158. Accordingly, the Defendant probation officers are likely entitled to judicial immunity for their role in investigating and recommending a particular amount of restitution. Plaintiff's claims against these Defendants should therefore be dismissed with leave to amend. In any First Amended Complaint, Plaintiff should omit allegations against these Defendants or include allegations plausibly showing that immunity does not apply.

**D.  Plaintiff's "Conditions Of Confinement" Claims Are Inadequately Pled**

Plaintiff appears to allege that he received inadequate food and water while being driven to and from Sacramento, was deprived of a shower on March 30, 2016, and possibly that he spent a night without enough blankets to keep warm.[6]  (Compl. at 5-10, 12).

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing Farmer v. Brennan, 511 U.S. 825, 832 (1994)).  Prison officials therefore have a "duty to ensure that prisoners are

---

[6]  It is unclear whether Plaintiff's allegations regarding his access to blankets are intended to state an Eighth Amendment claim or are provided as background to his claims that he was retaliated against for complaining about prison conditions.

14

provided with adequate shelter, food, clothing, sanitation, medical care, and personal safety." Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000). To establish a violation of this duty, a prisoner must satisfy both an objective and subjective component. See Wilson v. Seiter, 501 U.S. 294, 298 (1991). First, a prisoner must demonstrate an objectively serious deprivation, one that amounts to the denial of "the minimal civilized measures of life's necessities." Keenan v. Hall, 83 F.3d 1083, 1089 (9th Cir. 1996) (quoting Rhodes v. Chapman, 452 U.S. 337, 346 (1981)). Second, a prisoner must also demonstrate that prison officials acted with a sufficiently culpable state of mind, that of "deliberate indifference." Wilson, 501 U.S. at 303; Johnson, 217 F.3d at 733.

A prison official is liable for denying an inmate humane conditions of confinement only if "the official knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837.

Here, many of the conditions of confinement challenged by Plaintiff were isolated deprivations lasting part of a day or a single night. Plaintiff has not plausibly pled that these deprivations caused pain or injury sufficient to state a cognizable Eighth Amendment claim. See, e.g., Foster v. Runnels, 554 F.3d 807, 814 (9th Cir. 2009) ("The sustained deprivation of food can be cruel and unusual punishment when it results in pain without any penological purpose . . . The repeated and unjustified failure to

[provide adequate food] amounts to a serious depr[i]vation." (emphasis added)); see also Bartholomew v. Muhammad, 599 F. App'x 313, 313-14 (9th Cir. 2015) (prisoner did not raise genuine dispute of material fact as to whether failure to provide him with soap, a shower, or a blanket on one day was sufficiently serious to state Eighth Amendment claim); Garrett v. Gonzalez, 588 F. App'x 692, 692 (9th Cir. 2014) (case properly dismissed where prisoner made insufficient showing that deprivation of food "resulted in any pain or injury to his health"); Bartholomew v. Solorzano, 2014 WL 1232236, at *3 (E.D. Cal. 2014) (daily showers are not required and complete denial of showers for a week does not violate the Eighth Amendment); Gunn v. Tilton, 2011 WL 1121949 at *3-*4 (E.D. Cal. 2011) (collecting cases for proposition that temporary deprivations of sanitation, water, and shelter that last "a short amount of time" and do not pose a "serious threat of harm" do not give rise to Eighth Amendment claim); Centeno v. Wilson, 2011 WL 836747 at *3 (E.D. Cal. 2011) (depriving prisoner of mattress, blanket, and shower access for seven days did not violate Eighth Amendment).[7] Even if any of the aforementioned conditions gave rise to "a substantial risk of serious harm," Plaintiff also has not shown that any Defendant or potential Defendant was aware of that risk. Farmer, 511 U.S. at 837.

The "conditions of confinement" claims described above must therefore be dismissed with leave to amend. If Plaintiff chooses to re-assert these claims in any First Amended Complaint, Plaintiff must

---

[7] The Court cites non-precedential opinions for their persuasive value only.

16

include allegations establishing that any deprivations complained of were sufficiently serious to give rise to an Eighth Amendment claim.

**E.     Plaintiff Has No Constitutional Right To A Prison Grievance Procedure**

Plaintiff alleges that, in refusing to give him a grievance form, a correctional officer "clearly violat[ed] [his] due process." (Compl. at 8). However, an inmate has no constitutionally protected interest in a prison grievance procedure. Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988) ("[T]o obtain a protectable right an individual must have a legitimate claim of entitlement to it. . . . There is no legitimate claim of entitlement to a grievance procedure." (citations omitted)); see also Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) ("[I]nmates lack a separate constitutional entitlement to a specific prison grievance procedure.") (citing Mann, 855 F.2d at 640); Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir. 1996) ("With respect to the Due Process Clause, any right to a grievance procedure is a procedural right, not substantive one. Accordingly, a state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause.") (citations omitted).

Because Plaintiff has no federally protected right to a grievance procedure, Plaintiff's Due Process claim regarding his access to a grievance procedure must fail and should be omitted from any First Amended Complaint.

**F.     Plaintiff's "Abuse Of Power" Claim Appears Redundant**

Plaintiff raises "abuse of power" claims against all Defendants other than Kinman. (Compl. at 5). However, although "[t]he policies underlying § 1983 include compensation of persons injured by deprivation of federal rights and prevention of abuses of power by those acting under color of state law," Robertson v. Wegmann, 436 U.S. 584, 590—91 (1978), the Court cannot identify any authority giving rise to a freestanding "abuse of power" claim. Instead, it appears that Plaintiff's "abuse of power" claims are redundant and duplicative of his other claims. Thus, the Court dismisses the "abuse of power" claims with leave to amend so that Plaintiff may clarify and distinguish these claims if necessary.

**CONCLUSION**

For the reasons discussed above, the Court DISMISSES the Complaint WITH LEAVE TO AMEND.

If Plaintiff still wishes to pursue this action, he shall file a First Amended Complaint **no later than 30 days from the date of this Order, or no later than September 18, 2017**. **The First Amended Complaint must cure the pleading defects discussed above and shall be complete in itself without reference to any prior pleading. See C.D. Cal. L.R. 15-2 ("Every amended pleading filed as a matter of right or allowed by order of the Court shall be complete including exhibits. The amended pleading shall not refer to the prior, superseded**

**pleading."). This means that Plaintiff must allege and plead any viable claims asserted in prior pleadings again.**

In any amended complaint, Plaintiff should identify the nature of each separate legal claim and confine his allegations to those operative facts supporting each of his claims. For each separate legal claim, Plaintiff should state the civil right that has been violated and the supporting facts for that claim only. Pursuant to Federal Rule of Civil Procedure 8(a), all that is required is a "short and plain statement of the claim showing that the pleader is entitled to relief." However, Plaintiff is advised that the allegations in the First Amended Complaint should be consistent with the authorities discussed above. In addition, the First Amended Complaint may not include new Defendants or claims not reasonably related to the allegations in the previously filed complaints. **Plaintiff is strongly encouraged to once again utilize the standard civil rights complaint form when filing any amended complaint, a copy of which is attached.**

Plaintiff is explicitly cautioned that failure to timely file a First Amended Complaint, or failure to correct the deficiencies described above, may result in a recommendation that this action, or portions thereof, be dismissed with prejudice for failure to prosecute and/or failure to comply with court orders. See Fed. R. Civ. P. 41(b). Plaintiff is further advised that if he no longer wishes to pursue this action in its entirety or with respect to particular Defendants or claims, he may voluntarily dismiss all or any part of this action by filing a Notice of Dismissal in accordance

with Federal Rule of Civil Procedure 41(a)(1). A form Notice of Dismissal is attached for Plaintiff's convenience.

IT IS SO ORDERED.

Dated: August 16, 2017.

                                                _____/s/_____
                                                           ALKA SAGAR
                                      UNITED STATES MAGISTRATE JUDGE